# 𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

CATLETT AND OTHERS V. ALSOP, MOSBY & CO. AND OTHERS.

NOVEMBER 21, 1901.

1. HUSBAND AND WIFE—*Separate Estate—Code, Ch. 103—Husband Agent for Wife.*—Under the provisions of chapter 103 of the Code, a married woman has the right to engage in trade and carry on business on her own account for her separate use and benefit in the same manner as if unmarried, except that she cannot become a partner of her husband. She may purchase on credit, and, in the absence of a fraudulent intent, may conduct the business, wholly or in part, through her insolvent husband, as her agent. The profits of such business are her separate estate, and are not liable for her husband's debts.

2. FRAUDULENT CONVEYANCES—*Husband and Wife—Husband Agent for Wife.*—Whether an arrangement by which a wife conducts a profitable business through the agency of her insolvent husband is *bona fide*, or colorable, merely to cheat the husband's creditors, is a question of fact to be determined by all the facts and circumstances of the particular case. The fact that the wife has neither experience nor separate estate at the time she purchases goods on credit and begins a business, which is conducted solely and exclusively by her insolvent husband, as her agent, is a circumstance to be considered in connection with other evidence, in determining the *bona fides* of the wife, but is not alone sufficient to charge the wife with fraud.

3. SEPARATE ESTATES—*Husband Agent for Wife—Rights of Husband's Creditors.*—If a wife, acting in good faith, employs her insolvent husband to conduct her business as her agent, and the amount of his compensation be not fixed, the law will imply, as in case of a stranger, that he is to receive a reasonable compensation. This amount, less a reasonable support for himself and family, his creditors may subject, but no more. The wife is under no greater legal obligation to his creditors, and they have no greater legal rights against her than if he were not her husband.

Appeal from a decree of the Circuit Court of Tazewell county pronounced December 7, 1900, in a suit in chancery wherein the appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*S. W. Williams, Davis & Davis, John W. Friend,* and *Fulton & Coulling,* for the appellants.

*Henry & Graham* and *George W. St. Clair,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is the sequel to the case of *Alsop, Mosby & Co.* v. *Catlett & Jenkins,* reported in 97 Va., 364.

That suit was brought to set aside an assignment made by the firm of Catlett & Jenkins, and to subject the property embraced in it, other property acquired in lieu of the property conveyed, and the profits derived therefrom, to the payment of certain judgments due the complainants, upon the ground that the assignment was made for the purpose of hindering, delaying, and defrauding the creditors of the grantors. It was decided in that case that the charges of fraud were not made out against the trustee or the only beneficiary in the deed of assignment, who was charged with being a party to the fraud, and the bill dismissed without prejudice, however, to the right, if any, of the creditors to proceed against Catlett & Jenkins and their wives to subject the property acquired and the profits made by the latter through the services of their husbands.

For the purpose of subjecting the property and profits alleged to have been thus acquired, this suit was instituted by some of the creditors.

The bill, after giving a history of the proceedings in the former case and the amount and character of the complain-

ants' claims, makes the following allegations, briefly stated:
That about April, 1893, the trustee in the deed of assignment
sold to Mrs. Coleman, the mother of one of the grantors and
the aunt of the other, the remnant of a stock of goods for the
sum of $1,500, to be credited on her debt of $3,000, preferred
in and secured by the assignment; that immediately after this
purchase by Mrs. Coleman she entered into a contract with the
wives of the grantors by which she agreed to let them have the
said stock of goods in consideration of their paying her whole
debt of $3,000; that it was provided by this agreement that the
mercantile business was thereafter to be conducted in the name
of Catlett & Jenkins, the husbands, for Mrs. Coleman until her
debt was paid in full; that this contract was made in April, 1893,
but not reduced to writing until a year afterwards; that by
February, 1896, there had been paid out of the proceeds of
this business, carried on by the husbands, Mrs. Coleman's debt
in full; that during the same period the house in which the
business was conducted was conveyed to the wives for the con-
sideration of $1,725.00, and also another house and lot at the
price of $2,000, all of which was paid out of the proceeds of
the store conducted by the husbands; that neither of the wives
had any separate estate, property, or money when they pur-
chased the stock of goods of Mrs. Coleman, and paid nothing
thereon or on the price of the said real estate conveyed to them,
but the purchase price of the goods and real estate was paid en-
tirely out of the proceeds and profits of the store conducted by
their husbands; that by exhibits filed by the wives in the
former suit it appears that from about April, 1893, to Novem-
ber, 1897, the aggregate sales of the store were over seventy-
nine thousand dollars, upon which they admitted there was a
profit of thirty-three and one-third per cent.; that in the year
1898 the husbands established a store in Newport News similar
to the one at Pocahontas, which is carried on in the names of
the wives, and has been doing a lucrative business, as the com-

plainants are informed; that these stores are conducted exclusively by the husbands; that in fact there never has been in reality any change in the actual conduct of the business and ownership of the property from the beginning; that all the proceeds and profits arising therefrom wherever placed or invested, or into whatever they may have been converted, were the result of the labor, skill, and conduct of the husbands, who made all the purchases for the stores; going to northern and eastern markets for that purpose; that the husbands have given their personal attention not only to the purchases, but to the selling of the goods, employed the clerks, kept the books and bank account; that, in short, all the profits and accumulations of property claimed by the wives are due solely to the labor, skill, attention, and management of the husbands; that the wives not only have no estate whatever upon which to do business, but rendered no personal attention or service in its management; that the real estate and stock of goods thus held was created by the skill and labor of the husbands and belonged to them; that having the real estate conveyed to the wives and conducting the stores in their names was a mere device to hinder, delay, and defraud the creditors of the husbands from subjecting the property to the payment of their debts; and asked that the whole of said property might be subjected to their debts, or, if that could not be done, a just and proper portion of the profits made by the husbands in conducting the business in the names of the wives be set apart and subjected to the payment of the complainants' judgments.

The facts out of which this controversy grows are sufficiently stated in the opinion of this court in the case of *Alsop* v. *Catlett,* 97 Va., 364, to render unnecessary any further statement of what occurred prior to the date of Mrs. Coleman's purchase of the said remnant of a stock of goods conveyed by Catlett & Jenkins for the benefit of their creditors.

It appears from the record that after Mrs. Coleman purchased

that stock of goods she continued the business, conducting it at the same place, and in the name of Catlett & Jenkins, agents; that she subsequently made an agreement with their wives by which she sold or agreed to sell them the stock of goods upon condition that they would pay her what their husbands owed her for money loaned them. This agreement, which seems to have been made some time prior, was reduced to writing in April, 1894. In February, 1896, Mrs. Coleman acknowledged that she had been fully paid all that she was entitled to under the agreement, and transferred absolutely the stock of goods and all her interest therein to Mrs. Catlett and Mrs. Jenkins, who continued the business under the management of their husbands, but in their own names.

There was clearly nothing illegal or improper in the action of Mrs. Catlett and Mrs. Jenkins in purchasing the stock of goods, and in conducting the business, wholly or in part, through their husbands as their agents, unless it was done with a fraudulent intent.

A married woman, under the provisions of section 2287 of the Code, has the right to engage in trade and carry on business on her own account for her separate use and benefit in the same manner as if she were unmarried, except that she cannot become a partner of her husband. She has the right to buy on credit. *Williams* v. *Lord and Robinson,* 75 Va., 390, 403.

The section further declares that the products and earnings of such trade and business shall be her separate estate, and governed by the provisions of the two preceding sections. One of these sections, 2285, provides that such separate estate shall not be subject to the use and control or disposal of her husband, or to his debts or liabilities.

The only limitation which the statute imposes upon her right to engage in trade is that she cannot do so in partnership with her husband. She clearly would have the right to avail herself of the agency of her husband in such trade or business as if they

had not been united in marriage. To hold otherwise, would be to engraft upon the statute a limitation upon her rights in addition to that imposed by the Legislature. 2 Bishop on Married Woman, sec. 439.

Having the right to employ her husband as her agent in the management of such trade or business, it must follow as a necessary consequence that where the legal title to the capital upon which she is carrying on the trade or business of a merchant is in the wife, as against the husband, it cannot be subjected to the claims of the husband's creditors without proof that her title is merely colorable and fraudulent as against them. *Voorhees* v. *Bonesteel*, 16 Wall., 16.

Where the husband is indebted and insolvent, as was the case here, there is generally more or less reason to suspect that such arrangements are adopted as a cover to disguise the real ownership, and to defraud the husband's creditors. Whether in a given case the arrangement or transaction is *bona fide* or a colorable device to cheat the husbands' creditors is a question of fact to be determined upon all the facts and circumstances in point. *Knapp* v. *Smith*, 27 N. Y., 277, 280.

In purchasing the goods, and in continuing the business in the name of Catlett & Jenkins, agents, Mrs. Coleman, who was the mother of Catlett and the aunt of Jenkins, was doubtless influenced by a desire to furnish them employment, so that they could support their families as well as to save the residue of the debt which they owed her. By making a conditional sale of the business to their wives, she no doubt wished to put them in a position in which they could continue the business and thus aid in supporting their families. The record does not show that Mrs. Coleman in doing this was actuated by any illegal or fraudulent purpose. The husbands were indebted and insolvent. The contention that they broke full-handed is not proved. On the contrary, Jenkins, who was called as a witness by the complainants, testified that they turned over all their assets to the trus-

tee, and the circumstances relied on to show that this was not true are insufficient to overcome his testimony.

The fact that the wives had neither experience in the mercantile business nor separate estates when they entered into the agreement with Mrs. Coleman for the purchase of the stock of goods are circumstances to be considered in determining the question of fraud, but are alone or in connection with the other circumstances relied on insufficient to make good the charge that the agreement was merely colorable, that the goods and business were really the husbands' and not the wives', and that the arrangement was merely a fraudulent device to defeat the rights of creditors.

What rights had the creditors? It was the duty of the husbands to make use of their skill and energy to support their families and pay their debts. They could not conduct business, as we have seen, for themselves. They were not only indebted, but insolvent and without credit. If they had worked for strangers, all that their creditors could have reasonably expected from that source would have been their earnings or wages in excess of a reasonable support for themselves and families. If they worked for their wives, the creditors would be entitled to no more, for surely a wife, who under the law has the right to engage in trade and to employ her husband as an agent, as if she were a *feme sole*, is under no greater *legal* obligations to his creditors, and the latter have no greater *legal* rights against her than if he were some other woman's husband or not married at all.

It may be that such a construction will increase the temptation of the husband and wife to defraud their creditors. But the Legislature has deemed it right and proper to change the legal status of husband and wife from what it was under the common law. If their changed relations furnishes increased facilities for the commission of fraud, the remedy is with the Legislature. Clearly the courts ought not to disregard the plain

meaning of the statutes in question and deprive a married woman of her newly-acquired rights because of the increased facilities which the statutes may furnish for aiding her husband in defrauding the latter's creditors.

There does not seem to have been an express agreement between the husbands and wives as to the compensation the former should receive for their services. In the absence of such an agreement, the law would imply, as in case of a stranger, that they were to receive a reasonable compensation for the services rendered. This the creditors would have the right to subject to the payment of their claims, less the amount necessary for the reasonable support of the husbands and their families.

We are of opinion, therefore, that the Circuit Court erred in holding that the transaction by which the wives acquired the legal title to the stocks of goods and the real estate mentioned in its decree were fraudulent, and that the same was liable to the appellees' debts.

We are further of opinion that if the services rendered by the husbands for their wives in the management of their business was more than sufficient to support and maintain their families, including themselves, that excess is a debt due from their wives, and liable to their husbands' creditors; that the amount of such indebtedness, if any, may be ascertained in this cause by proper accounts and proved in the court of bankruptcy as one of the debts due from the estate of their wives.

The decree appealed from must be reversed and annulled, and the cause remanded to the Circuit Court for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*