### FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, Plaintiff,

v.

### Mary Lindsay STUDDS, Defendant.

### Civ. A. No. 1873.

United States District Court
E. D. Virginia, Norfolk Division.

Jan. 13, 1956.

As Modified Jan. 23, 1956.

Vandeventer, Black & Meredith, Walter B. Martin, Jr., Norfolk, Va., for plaintiff.

Richard G. Brydges, Virginia Beach, Va., William L. Parker, Norfolk, Va., for defendant.

HOFFMAN, District Judge.

Fidelity & Deposit Company of Maryland obtained a judgment against Colin A. Studds in the sum of $22,102.47, plus interest and costs, which judgment was rendered in this Court on the 16th day of September, 1953. Colin A. Studds and the defendant, Mary Lindsay Studds, were living in Wisconsin prior to 1950, where Mr. Studds was engaged in a contracting business. He failed in this business and, when he left Wisconsin for Virginia, the debt due the plaintiff was one of many remaining unpaid. Prior to entering business in Wisconsin, Studds solely maintained his home and family. While in Wisconsin, Studds provided approximately one-half of the cost of maintaining his family. Since moving to Virginia in the summer of 1950, Studds has provided nothing for the family and, according to the contention of the defendant and Studds, he has admittedly per-

formed gratuitous services for his wife, the defendant herein, since 1950 while engaged in building numerous houses in the Virginia Beach area as agent for the wife.

Plaintiff contends that defendant, having full knowledge of the insolvency of her husband, entered into a business arrangement with him with the intent to defraud the creditors of Studds and hence the transactions were colorable. Defendant urges that no action may be maintained to reach the value of services rendered by the husband for the wife, and that such services are gratuitous and not subject to attack by the creditors of Studds.

By agreement of counsel, an advisory jury was called pursuant to Rule 39(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The issue submitted to the jury was as follows:

"Was the business arrangement between Mary Lindsay Studds and Colin A. Studds, wherein Mrs. Studds conducted a business through the agency of Mr. Studds, a bona fide arrangement or one devised to cheat the creditors of Mr. Studds and therefore colorable?"

On this issue the jury concluded that the arrangement was devised to cheat the creditors of Mr. Studds and was colorable. The matter is now before the Court on defendant's motion to set aside the verdict of the jury.

As the fraudulent scheme between Studds and wife has been clearly proven from the evidence submitted, there are only two pertinent questions now before the Court:

(1) Is an action of this type maintainable in Virginia?

(2) Does the burden rest upon the defendant to show that the business arrangement was bona fide?

■ The alleged fraudulent gift of services took place in Virginia and the determination of these two issues are therefore dependent upon the law of this State. The case of Penn v. Whiteheads, 12 Grat., Va., 74, was decided by the Court of Appeals of Virginia in 1855, and again was presented to the same court in 1867 and is cited in 17 Grat., Va., 503. In those cases the husband carried on a profitable mercantile business as agent for his wife, aided by his minor sons. The factual situation is not unlike the matter now before the court. The Court, speaking through Justice Moncure, said, 17 Grat. 528:

"A man who is without the means of paying his debts is morally bound to do all he honestly can to acquire such means, and honestly to devote all the profits of his future labor to the payment of his debts. To be sure the law cannot, or does not, compel a man, in advance, to labor for his creditors. And if he chooses to be so dishonest as to idle or give away his time, rather than labor for the means of paying his debts, the law cannot, or does not, attempt to prevent it. But if he does labor and make any profit for himself, or his wife and family, which is the same thing, his creditors may subject it to liability for the payment of their claims. Husband and wife are one in law, and he is bound, morally if not legally, to support her and the rest of his family. In laboring for them he labors, in effect, for himself. Every benefit secured to them is a benefit, incidentally, secured to himself. And as the law will not allow him directly to secure the profits of his future labor to himself, in exclusion of the claims of his creditor, it will not allow him, indirectly, to do the same thing, by securing such profits to his wife or family; at least *quoad* his existing creditors. A man is not apt to give away his labor, or even idle away his time. If he is not honest enough to wish to pay his debts, self-interest prompts him to do something, and to try to secure to himself and his family the profits of his skill and labor. This motive of self-interest is generally sufficient, without being assisted by legal means, to stimulate

a man into action and prevent him from throwing or giving away his time, instead of trying to make a profitable use of it. And the law, instead of attempting to apply such a stimulus, contents itself with subjecting any profit he may make for himself or family to liability to the payment of his debts as aforesaid."

In 1901 the Supreme Court of Appeals of Virginia had before it the case of Catlett v. Alsop, Mosby & Co., 99 Va. 680, 40 S.E. 34, 36, previously before the Court in Alsop v. Catlett, 97 Va. 364, 34 S.E. 48. The later action was on the part of creditors proceeding against the husbands and their wives to subject property acquired and profits made by the wives through the services of their husband. No reference is made in the opinion to Penn v. Whiteheads, supra, and the Court, after discussing the separate rights of married women under the laws of Virginia, had this to say:

"There was clearly nothing illegal or improper in the action of Mrs. Catlett and Mrs. Jenkins in purchasing the stock of goods and in conducting the business, wholly or in part, through their husbands as their agents, *unless it was done with a fraudulent intent.* * * *

"Having the right to employ her husband as her agent in the management of such trade or business, it must follow as a necessary consequence that, where the legal title to the capital upon which she is carrying on the trade or business of a merchant is in the wife, as against the husband, *it* cannot be subjected to the claims of the husband's creditors, without proof that her title is merely colorable and fraudulent as against them."

The Court held that there was insufficient proof of fraud to subject the legal title to the stocks of goods and real estate to the payment of debts due the creditors of the husbands. On the ques-

tion of compensation for the husbands, it is said, 99 Va. 687, 40 S.E. 34, 36:

"There does not seem to have been an express agreement between the husbands and wives as to the compensation the former should receive for their services. In the absence of such an agreement, the law would imply, as in case of a stranger, that they were to receive a reasonable compensation for the services rendered. This the creditors would have the right to subject to the payment of their claims, less the amount necessary for the reasonable support of the husbands and their families. * * *

"We are further of opinion that, if the services rendered by the husbands for their wives in the management of their business was more than sufficient to support and maintain their families, including themselves, that excess is a debt due from their wives, and liable to their husbands' creditors; * * *."

Thereafter, in Atkinson v. Solenberger, 1910, 1911, 112 Va. 667, 72 S.E. 727, 729, the Supreme Court of Appeals of Virginia, after referring to Penn v. Whiteheads, supra, and Catlett v. Alsop, Mosby & Co., supra, made this brief statement:

"Where a husband renders services for his wife, whether under an express or implied agreement, his creditors have the right to subject the value of such services to the payment of their debts, less the amount necessary for the reasonable support of the husband and his family. * * *

"The fact that during the period the husband is rendering services for the wife she supports the family is no reason why, when his creditors are seeking to charge her with the value of his services, she should not be permitted to set off what she has advanced for the reasonable necessary support of the husband and his family during the period she is

charged with the value of his services. If the husband himself, under like circumstances, were to sue his wife to recover the value of his services, it is clear that he could only recover from her the value of his earnings or wages in excess of a reasonable support for himself and family. The creditors are entitled to no more."

Thus it appears that the law in Virginia is well settled that the existing creditors of an insolvent husband may subject the value of his services rendered to his wife to the payment of claims, less the amount necessary for the reasonable support of the husband and his family, with the right of the wife to set off such amounts advanced, if any, for the reasonably necessary support of the husband and his family. Was the law modified in Childress v. Fidelity & Casualty Co., etc., 194 Va. 191, 72 S.E.2d 349, 353, 35 A.L.R.2d 1, decided 1952, and, if so, to what extent?

The opinion in Childress v. Fidelity, etc., supra, makes no mention of Penn v. Whiteheads and Catlett v. Alsop, Mosby & Co., both supra. It will be noted that, in Childress, the creditors sought to subject a tract of land acquired by the wife under the theory that title was taken in the wife's name with intent to defraud the creditor. In approaching the question of services rendered by the husband to the wife, thus increasing the property holdings of the wife, it is noted:

"Here the evidence establishes that the insolvent husband donated his services to his wife by managing and conducting her business while his creditor remained unpaid. That is a practice not lending itself to commendation. Yet the gift by the husband is not unlawful, and of itself, it is insufficient to convict the wife of fraud. Acquisition by her of property with funds derived from her business so gratuitously conducted by her husband as her agent may not, *on that ground alone,* be set aside by his creditors."

Then follow quotations from American Law Reports and Michie's Jurisprudence, where it is stated:

" 'Since his creditors have no lien on his labor or any way to compel him to work, a debtor may legally give his entire time, skill and industry to his wife, in aiding to carry on a business owned by her, and his creditors cannot complain of his doing so, since such a donation of services is not inconsistent with his obligations towards them.' 28 A.L.R. 1046, 1048.

" 'Husband conducts business as agent for wife: *Whether an arrangement by which a wife conducts a profitable business through the agency of her insolvent husband is bona fide or colorable, and merely to cheat the husband's creditors is a question of fact to be determined by all the facts and circumstances of the particular case.* The fact that the wife has neither experience nor a separate estate at the time she purchases goods on credit and begins a business, which is conducted solely and exclusively by her insolvent husband as her agent, is a circumstance to be considered in connection with other evidence in determining the bona fides of the wife, but is not alone sufficient to charge the wife with fraud.' 9 Michie's Jurisprudence, Fraudulent and Voluntary Conveyances, sec. 26, p. 39."

It is the opinion of this Court that Childress, supra, made no radical departure from the prior Virginia decisions. It may have modified, to some extent, the language of Justice Moncure in Penn v. Whitehead, supra, but the general tenor of Childress, when read in conjunction with the other authorities, is to the effect that if the business arrangement between husband and wife was one essentially planned and operated for the purpose of cheating the husband's creditors, then the wife must respond to the extent of the value of the husband's services, less the amount nec-

essary for the reasonable support of the husband and his family during the period of the rendition of such services.

It is true that a debtor's labor is not generally an asset for creditors until the hire-money is actually received by him. Glenn on The Law of Fraudulent Conveyances, §§ 139, 140, pp. 190, 191. This rule is subject to the proviso, however, that the employment transaction is bona fide and not merely a scheme fraudulently designed for the purpose of defeating creditors of the laboring party. To hold otherwise would open an avenue of fraud and constitute an invitation to all parties similarly inclined. The annotation appearing in 28 A.L.R. 1046, et seq., apparently recognizes this distinction and, if not, Virginia falls within a minority rule as Penn v. Whiteheads and Catlett v. Alsop, both supra, are referred to in the same annotation 28 A.L.R. at page 1060, under the caption entitled "Cases Denying Validity of Gift." The rule is also set forth in 37 C. J.S., Fraudulent Conveyances, § 16(b), p. 861, 862:

> "If a husband donates his services to his wife, in working for her in a business owned and conducted by her as her separate property, or as her agent in executing a contract made by her with a third person, or, *a fortiori*, where the husband is employed by the wife on a salary, it is held that the husband's creditors cannot *by reason of such donation of his services or employment* reach and subject the property or claims thereby acquired by the wife; and this principle applies however valuable may be the services of the husband, and although he is insolvent.
>
> "For the principle to apply, it must appear that the business is actually the wife's and not a device to keep from the husband's creditors the profits and income of a business which is really his own. The principle has no application where a husband, for the purpose of defrauding his creditors, does business in his wife's name but for his own benefit,

and an insolvent debtor cannot defeat creditors by simply transferring his property to his wife and managing it for her as her agent."

In the instant case Mrs. Studds acquired title to real estate in her name, but the business of constructing the residences thereon, while ostensibly in the name of the wife, was, as the jury concluded, merely a scheme to defraud the creditors of Mr. Studds.

Despite the refusal of defendant to submit any requested charge to the jury, the Court took the precaution of advising the jury (1) with respect to the rights of married women in Virginia, (2) that the fact of the marriage is not in itself a badge of fraud, (3) that Studds had a legal right to donate his services to his wife, and to manage and conduct her business while his creditors remained unpaid, and (4) that the gift of services is not in and of itself unlawful, nor is it sufficient to convict Mrs. Studds of fraud.

The sole remaining question for determination deals with the question of burden of proof. On this point the Court charged the jury:

> "May I say to you that the only basic principles that should guide you perhaps is the fact that a gift between an insolvent husband and his wife is presumed to be for the purpose of delaying and hindering the husband's creditors, and thus it is in this case * * * the burden is on Mrs. Studds to show by clear and convincing evidence that the gift was in fact a bona fide gift rather than an arrangement made for the purpose of cheating the creditors."

Section 55-81 of the Code of Virginia 1950, provides:

> "Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, shall be void as to creditors whose debts shall have been contracted at the time it

was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made; and though it be decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers."

While the word "void" has been construed to mean "voidable"[1], it is perfectly apparent that an arrangement for gratuitous services in the form of a gift by the husband to the wife falls within the intent of the statute. Penn v. Whitehead, supra, 17 Grat. at page 527. The word "gift" was defined in Logan v. Glass, 136 Pa.Super. 221, 7 A. 2d 116, 118, as " 'primarily some performance or right which is not paid for by the recipient and which is apparently designed to benefit him.' " Generally the rule is applied to transfers of tangible property from the husband to the wife in which event public policy dictates that the transactions are presumed to be fraudulent with the burden on the wife to prove the good faith of the transaction by clear and satisfactory evidence. Morrisette v. Cook, 122 Va. 588, 592, 95 S.E. 449. There appears to be no sound reason why the same burden should not be imposed upon the wife with respect to a gift of services from an insolvent husband. There is ample authority supporting the view that a man's labor, or right to labor, is "property", and the right to enter into contracts of employment, or to terminate such contracts is similarly regarded. 73 C.J.S., Property, § 2, p. 151.

Defendant's motion to set aside the verdict of the jury is denied. The verdict of the jury is accepted by the Court, and this cause will be referred to a Special Master for the determination of damages in accordance with the formula and views expressed herein.

1. Norris & Co. v. Jones, 93 Va. 176, 24 S.E. 911.