**Mary Lindsay STUDDS and Colin A. Studds, Appellants and Cross-Appellees,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, Appellee and Cross-Appellant.**

**No. 7828.**

United States Court of Appeals Fourth Circuit.

Argued April 13, 1959.

Decided May 28, 1959.

William L. Parker, Norfolk, Va., for appellants and cross-appellees.

Walter B. Martin, Jr., and Hugh S. Meredith, Norfolk, Va., for appellee and cross-appellant.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BOREMAN, District Judge.

BOREMAN, District Judge.

The Fidelity and Deposit Company of Maryland, plaintiff below, obtained a judgment against Mary Lindsay Studds, defendant below, hence this appeal. The parties will be hereinafter referred to, respectively, as plaintiff and defendant.

Colin A. Studds and the defendant, now residents of Virginia, formerly resided in Wisconsin where Mr. Studds was engaged in a building contracting business. This business failed and when he and the defendant left Wisconsin for Virginia, a debt of $22,102.47 due the plaintiff remained unpaid. The plaintiff thereafter obtained a judgment for the amount of the debt against Colin A. Studds.

Subsequently, in an effort to collect its judgment against defendant's husband, Colin A. Studds, plaintiff, instituted the present action against the defendant. The complaint, as amended, alleged: That the defendant is the legal wife of Colin A. Studds; that Colin A. Studds is legally indebted to the plaintiff in the amount of $22,102.47, as evidenced by the aforementioned judgment; that Colin A. Studds had, for a period of about five years prior to the institution of the present action, been in the sole employment of the defendant; that during this period, although Colin A. Studds rendered numerous valuable services to the defendant in her business, he received no pecuniary remuneration for his services; that Colin A. Studds, during the entire period when working for the defendant, was insolvent; and that the arrangement by which the husband worked for his wife, the defendant, had as its purpose an intent to defraud the creditors of the husband. By agreement of counsel, an advisory jury was called and the issue submitted to the jury was stated by the trial court as follows:

"Was the business arrangement between Mary Lindsay Studds and Colin A. Studds, wherein Mrs. Studds conducted a business through the agency of Mr. Studds, a bonafide arrangement or one devised to cheat the creditors of Mr. Studds and therefore colorable?"

On this issue the jury concluded that the arrangement was devised to cheat the creditors of Mr. Studds and colorable.

The defendant moved that the verdict of the jury be set aside on the ground that there was no evidence before the jury on which the verdict could be predicated and that the issue, as framed by the Court, should not have been presented to the jury. The Court overruled the defendant's motion and, after twice submitting the case to a Special Master to determine the amount of damages, rendered final judgment for the plaintiff in the amount of $10,125.14. On this appeal the defendant contends that, even though the facts alleged and proved to the satisfaction of the jury be true, there exists no such cause of action in the State of Virginia. Both parties have appealed on the question of the proper amount of damages.

The evidence disclosed that the defendant had her separate income from a trust fund amounting to approximately $20,000 a year; that while in Wisconsin, Colin A. Studds provided approximately one-half of the cost of maintaining his wife and family; that since moving to Virginia in the summer of 1950 Colin A. Studds has provided nothing for the family and has performed gratuitous services for the defendant since 1950 while engaged in building numerous houses in the Virginia Beach area as agent for the defendant.

At the outset, it is interestingly significant to note that the complaint does not allege that the capital with which the building business in question was commenced and continued was *not* the actual and bona fide separate estate of the defendant. Neither is there any allegation that the business in question was successful and accumulated profits. The main question presented for determination is whether, on the basis of the allegations, a valid cause of action exists in Virginia.

Before attempting to analyze and apply the law of Virginia, it is discovered that the great weight of authority, in many other jurisdictions, approves the principle that a debtor, even though insolvent, has committed no fraud in law or in fact by giving his labor away, for by so doing he has not concealed, withheld or disposed of anything on which his creditors have any claim in law or in equity; and, generally, this rule applies with equal force although the relationship of the debtor and his employer is that of husband and wife. Annotation 28 A.L.R. 1046 (1924). See also 37 C. J.S. Fraudulent Conveyances § 16(b) (1943).

By virtue of certain early decisions, Virginia has, until recently, adhered to a decidedly minority view. The first such decision was in the case of Penn v. Whitehead, 1855, 12 Grat., Va., 74, in which the husband's creditors were allowed to subject to liability, in a situation similar to the one here in issue, the property which the business had accumulated through its profitable operations. The liability there sought and imposed was *in rem*, or special, in nature, against the accumulated property which was the subject matter of the suit, and not *in personam* against the wife or her general credit. The Penn case was before the Supreme Court of Virginia a second time in 1867, reported at 17 Grat. 503. At that time it was unequivocally held that in order for the creditors of the husband to claim the value of his services, it must be shown that there were profits, after the payment of all the business debts, from which the husband's services could be compensated.

The next Virginia decision touching on this question was in the case of Catlett v. Alsop, Mosby & Co., 1901, 99 Va. 680, 40 S.E. 34. This also was an action against the wife to subject the *profits* made by the husband-debtor *for* his wife

to the payment of the husband's debts. On the authority of the Penn v. Whitehead cases, the Virginia court again allowed recovery.

It is clear to this Court that neither the two Penn v. Whitehead cases nor the Catlett case are acceptable authority upon which the plaintiff here could be permitted to recover. The all-important distinction is that here the recovery is sought against the wife's general credit with no allegation, and certainly with no proof, that the business operated by Colin A. Studds for the defendant accumulated any profits.

Subsequently, the Supreme Court of Virginia decided the case of Atkinson v. Solenberger, 1910, 112 Va. 667, 72 S.E. 727, 729. At first glance, this decision appears to have unwittingly extended or enlarged the rule as adopted in the prior cases wherein the Court said:

> "Where a husband renders services for his wife, whether under an express or implied agreement, his creditors have the right to subject the value of such services to the payment of their debts, less the amount necessary for the reasonable support of the husband and his family. See Catlett v. Alsop, Mosby & Co., 99 Va. 680, 687, 40 S.E. 34; Penn v. Whitehead, 17 Grat. 503, 525, 94 Am. Dec. 478; Id., 12 Grat. 74, 80."

However, a searching examination of the entire decision discloses that the Atkinson case simply holds that, under such circumstances, the wife must be allowed a deduction of the amount necessary for the reasonable support of the family. The appellant in the Atkinson case was the party seeking to recover the value of the husband's services and the only assignment of error, pertinent to the instant case, was as to the allowance of the deduction for support. The question as to whether the wife can be subjected to liability *generally* for the value of her husband's services, in the absence of a showing that profits were created by the services so rendered, was neither presented to nor decided by the court. In fact, it is impossible to determine from the reported Atkinson decision whether the purpose of the litigation was to subject to liability the general credit of the wife or merely the profits created by the husband's services. Therefore, we find the Atkinson case neither pertinent nor helpful in providing an answer to our present inquiry.

As previously noted, although the early Virginia cases of Penn v. Whitehead and Catlett v. Alsop, Mosby & Co. deviated to some extent from the general view, those cases are significantly distinguishable from the one here to be decided. However, we are of the opinion that Virginia has adopted the majority view and that the Penn and Catlett cases have been impliedly overruled by a more recent decision in the case of Childress v. Fidelity & Cas. Co. of New York, 1952, 194 Va. 191, 72 S. E.2d 349, 353, 35 A.L.R.2d 1. In the Childress case, two separate questions were presented: One ground, upon which recovery was sought therein, was based on the contention by the creditor that the wife's land was not really hers, but had been transferred to her voluntarily by her husband through a fraudulent scheme to remove the property beyond the claims of her husband's creditors; that it was hers in name only and that the husband was, in reality, operating his own business under a colorable arrangement. Although recognizing that such a device, if properly proved, would be a valid basis for recovery, the court held this contention to be unsupported by the evidence. The second and more important holding of the Childress case concerns the contention by the husband's creditor that the *land*, which had been purchased with the *profits* of the enterprise, could be subjected to the claims of the creditor for the reasonable value of the husband's gratuitous services. This was substantially the same question presented and decided in the Penn and Catlett cases. Without any reference whatsoever to the Penn and Catlett or the Atkinson cases, the court held that since

the land and its profits were traceable to the wife's original purchase and *her* business enterprise, there could be no recovery on this second theory, thus clearly, by implication, overruling all the prior Virginia decisions and aligning Virginia with the generally accepted majority view.

In the Childress case, the Supreme Court of Virginia quoted with approval the following language from Annot. 28 A.L.R. 1046, 1048 (1924):

"Since his creditors have no lien on his labor or any way to compel him to work, a debtor may legally give his entire time, skill and industry to his wife, in aiding to carry on a business owned by her, and his creditors cannot complain of his doing so, since such a donation of services is not inconsistent with his obligations towards them."

A summary of the majority view in 37 C.J.S., Fraudulent Conveyances § 16(b) (1943), appears to perfectly express what we believe to be the holding of the Childress case as follows:

"A husband may donate his services to his wife in her separate business without rendering the property or claims thereby acquired by her subject to his creditors' claims; but the principle applies only if the business is actually the wife's and not a device to keep from his creditors the income of a business which is actually his own business."

The court in the Childress case, in stating that fraud is a question of fact to be determined by all the facts and circumstances of the particular case, was dealing with the question of whether the *original transfer* of the property or business to the wife was bona fide or merely to cheat the husband's creditors and thus colorable. The intent with which the husband donates his services voluntarily to his wife and the intent with which the wife accepts such services is immaterial. That this was the conception of the law by the Virginia Court in the Childress case is shown by the following language, 194 Va. at page 200, 72 S.E.2d at page 354:

"The documentary and other evidence clearly proves that the sawmill was in the first instance purchased and owned by Kelsey T. Childress [the wife]. When operated by her husband, he did so as her agent and manager and not on his own account. The profits derived belonged to her and not to him. These funds were used by her to purchase the 138 acres of land which enhanced in value, and from the manufacture of the timber thereon, considerable profits were made. Profit was also made by the sale of a valuable parcel of this tract to C. H. Reagan. This land, its enhanced worth, and the profits thus derived, are, however, traceable to and are the result of her original purchase and her business enterprise, and not her husband's.

"It does not appear that the conveyance by Zack Justice to Kelsey T. Childress was in fraud of Fidelity's rights. The land was paid for by her, and neither it nor the funds now on deposit with the court are subject to the judgment held against her husband."

Applying our interpretation of the law of Virginia, we reach the conclusion that it was error to submit to the jury, for determination, the question as to whether the arrangement between the defendant and her husband was, in effect, devised in fraud of the rights of the plaintiff. It was additional error to base further proceedings upon the jury's finding. Therefore, it is unnecessary to consider the remaining questions raised on appeal as to the proper amount of damages.

The judgment in favor of the plaintiff will be vacated and set aside and the case remanded so that judgment may be entered for the defendant.

Reversed and remanded.