**SUNRAY DX OIL COMPANY, a Delaware Corporation, and West Peck Prue Sand Unit, Plaintiffs in Error,**

**v.**

**W. N. BROWN and Keturah Brown, husband and wife, Defendants in Error.**

**No. 42405.**

Supreme Court of Oklahoma.

Sept. 29, 1970.

Rehearing Denied Nov. 24, 1970.

J. P. Greve, N. E. Proctor, Ben Hatcher, Tulsa, for plaintiffs in error.

James & Butts, Stroud, for defendants in error.

DAVISON, Justice.

This action was prosecuted by plaintiffs, W. N. Brown and Keturah Brown, against the defendants, Sunray DX Oil Company and West Peck Prue Sand Unit, to recover damages from defendants for a private nuisance which was allegedly created by defendants in connection with their operation for oil and gas on lands owned by plaintiffs. The land involved is covered by an oil and gas lease which constitutes a part of West Prue Sand Unit of which Sunray DX Oil is the operator. Plaintiffs asked for and received judgment, jointly and severally, against said defendants. Defendants have perfected this appeal. We shall hereafter refer to the parties as they appeared in the trial court.

Plaintiffs were the owners of a 400 acre tract of land which was under oil and gas lease and operated by defendants. Plaintiffs allege that within a period of two years immediately prior to filing of their petition there had been approximately 31 separate leaks of oil and salt water caused by defendants permitting their line to become so deteriorated, and that from such wrongful and unlawful acts and operations and as a direct, natural and proximate result salt water, oil and other basic sediment ran across the surface of plaintiffs' land and killed or damaged grasses, vegetation, crops, and a portion of plaintiffs' land; that such acts of the defendants created a nuisance to plaintiffs in their ownership, possession and enjoyment of

their premises; that as a result of said acts plaintiffs alleged they were permanently damaged in the amount of $7000.00. Plaintiffs also asked for exemplary damages.

Plaintiffs' petition particularly described each and all of the 31 leaks, giving the particular locations of each leak, and the particular date upon which each leak occurred. The theory for the basis for the action and the theory upon which the case was tried was for a private nuisance.

The trial resulted in a jury verdict in favor of the plaintiffs for $6000.00 actual damages and $1000.00 punitive damages.

For reversal the defendants rely on four propositions, the first of which is as follows:

Proposition I. "The trial court erred in overruling defendants' motion to require plaintiffs to separately state and number their causes of action."

Defendants argue that when plaintiffs pleaded and proved the salt water escaped from the 31 separate leaks from defendants' pipelines and flowed over or settled on plaintiffs' land that a separate wrong was created by each separate leak and that the trial court erred in permitting plaintiffs to produce evidence showing the total injury to the land instead of requiring them to show how much each separate leak affected the value of the land. Defendants contend that there should have been 31 separate causes of action and 31 separate verdicts.

The evidence disclosed that the alleged nuisance was temporary, and was abated shortly after the present suit was filed, by the defendants replacing the old pipelines with new and adequate lines.

In our opinion the case of Mid-Continent Petroleum Corporation v. Fisher, 183 Okl. 638, 84 P.2d 22, is decisive of the present proposition. The cited case was tried on the nuisance theory and the briefs in the case reflect that the overflows which caused the damage occurred several times a year within the statutory limitations. There we said that permanent damage to realty can result from a temporary and abatable nuisance. We also said in the second syllabus of that case:

"Either the damage to the land or the cause of the damage can be permanent or temporary in the legal sense; the rule of damages applicable in a given case is determined by whether the damage suffered is permanent or temporary, rather than whether the cause of the damage is permanent or temporary."

In this connection also see Magnolia Petroleum Co. v. Norvell, 205 Okl. 645, 240 P.2d 80.

Defendants' second proposition for reversal is stated as follows:

Proposition II. "The verdict and judgment herein are not supported by the evidence, because plaintiffs failed to introduce competent evidence in support of the legal measure of damages for injuries to plaintiffs' lands, such measure of damages being the difference between the reasonable market value of said lands immediately prior to and immediately after each injury occurred."

The trial court gave Instruction No. 8, as follows:

"You are instructed that the measure of damages in this case is the difference in the fair market value of land prior to the injury, if any, and the fair market value of the land after the injury."

The defendants objected to this instruction and requested the court to give their requested instruction No. 13 which request was refused. The requested instruction was rather long. It described the proper measure of damages as being the difference between the fair cash market value of the land *immediately* prior to the injury and the fair cash value of plaintiffs' land *immediately* after the injury.

It will be seen that the only material difference between the given instruction and the requested instruction is that the words "immediately" prior and *"immediately"* after were not used in the court's Instruction No. 8.

We are of the opinion that the court should have given the standard instruction which would have included the words "immediately" before and "immediately" after as the correct instruction.

However, in the present case the jury could not have been misled and the error in Instruction 8, under the facts and circumstances of the case, would only constitute harmless error.

Under the evidence in the present case all of the leaks occurred between the summer of 1964 and the middle of November, 1965. Plaintiffs' petition was filed January 31, 1966, being approximately ten weeks after the last leak; that all leaks occurred within the two year statutory limits and no leak occurred between the time the old pipelines had been replaced with new adequately safe pipelines constructed of standard materials.

Many photographs were offered in evidence by both plaintiffs and defendants to show the extent of the damage to the land involved, caused by the various leaks.

The witness Brown testified that the reasonable cash market value of the land in question prior to the leaks was $27,500.00, and was then asked the following question:

"Now, after these leaks occurred, these thirty-one leaks that you have testified about, knowing the condition of the land after they occurred, what in your opinion is the reasonable cash market value of the land, this same 400 acres, after the occurrence and damage of these leaks?"

and his answer was $20,000.00.

The witness Scott testified that prior to the damage by the leaks the land was worth $75.00 per acre and that after the leaks occurred the land was worth between $50.00 and $60.00 per acre.

The evidence offered by defendants as to the amount of damages caused by the leaks showed lesser damages than that shown by plaintiffs' evidence.

■ Under the harmless error doctrine, 12 O.S.1961, § 78, we hold that from an examination of the entire record it does not affirmatively appear that defendants were prejudiced or deprived of some substantial right by the giving of Instruction 8. Squyres v. Klick, Okl., 264 P.2d 325; Missouri, Kansas & Oklahoma Transit Lines, Inc., a Nevada Corporation, v. Jackson, Okl., 442 P.2d 287; Wooten v. Hall, Okl., 442 P.2d 334.

■ The record discloses competent evidence reasonably tending to support the finding of the jury, and that being true, this court will not disturb the verdict on appeal. Mid-Continent Petroleum Corporation v. Fisher, supra; Eberle v. State of Oklahoma ex rel. Department of Highways, Okl., 385 P.2d 868; Janko v. State of Oklahoma ex rel. Department of Highways, Okl., 455 P.2d 681.

Defendants for their third proposition for reversal urge that the trial court erred in submitting the issue of punitive damages to the jury.

The statute pertaining to punitive damages is Title 23 O.S.1961, § 9, and is as follows:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

■ This statute has been considered in a number of cases in this jurisdiction and we have consistently held that such damages are not limited to cases where there is direct evidence of fraud, malice, or gross negligence, but that such damages may be allowed when there is such recklessness and wanton disregard of another's right that malice and evil intent may be inferred. Fuller v. Neundorf, Okl., 293 P.2d 317; Dilworth v. Fortier, Okl., 405 P.2d 38; Gulf Oil Corporation v. McCoy, Okl., 416 P.2d 948. Also Garland Coal & Mining Company v. Few, 267 F.2d 875 (10th Circuit).

An examination of the record is necessary to determine if the evidence shows that defendants recklessly and wantonly disregarded the rights of the plaintiffs.

The defendants rely on evidence showing that there was no ill will or malice on the part of defendants toward plaintiffs.

The record shows, however, that sixteen of the 31 leaks occurred in 1964 and the balance in 1965, through November of that year; the record reflects that over half of the 31 leaks occurred on two small sections of pipe, one section being a 2-inch line about 400 feet long during the period of time involved and that seven other leaks occurred during such time on a 4-inch line of approximately 300 feet in length.

Mr. Gurney, a pumper of defendants', discovered some of the leaks while he was on the lease or when he came on the lease the next day. Some of the leaks were discovered by plaintiff, Mr. Brown, who, upon such discovery, reported the leaks to Mr. Gurney.

Gurney testified to the many leaks and testified that he timely reported each of the leaks to his superior, who in turn called a contractor who repaired them.

Mr. Armstrong, an assistant to Mr. Schwanke, head of the operations for defendants in the area involved, testified that Gurney timely reported the various leaks to either himself or to Mr. Schwanke. Armstrong further testified that in the spring of 1965, he and Mr. Schwanke discussed the numerous leaks that were occurring but nothing was done about replacing the pipe until January, 1966.

Mr. Schwanke testified that the cost of replacing the 2-inch pipe was $1200.00; that during the early part of 1965 he requested permission from the defendants out of the Tulsa office to replace the section of the 2-inch line and the 4-inch line, but did not get authority to expend the money to the small sections of lines until October, 1965, and that the lines were not replaced until January, 1966. He also testified that he reported the numerous leaks to defendants and that they had full knowledge of the leaks.

The trial court gave a correct instruction on the question of exemplary damages.

The defendants had many opportunities to protect themselves against a judgment for exemplary damages. The evidence is conclusive that defendants' failure to timely replace the old lines with adequate lines shows a reckless or wanton disregard for the rights of the plaintiffs. Even though plaintiffs could collect actual damages their rights were invaded by defendants causing the extra and uncalled for damages to plaintiffs' land. The evidence supports the verdict of $1000.00 in punitive damages.

Defendants' proposition four has been answered in the discussion of the three propositions above stated.

We find no substantial error in the record.

Judgment affirmed.

All Justices concur.