Darryl CATES, d/b/a National Motor Company, Appellant,

v.

Danny J. DARLAND, Appellee.

No. 46403.

Supreme Court of Oklahoma.

June 24, 1975.

Jon B. Wallis and Gomer A. Evans, Jr., Tulsa, for appellant.

Bill V. Wilkinson, Chapel, Wilkinson, Riggs & Abney, Tulsa, for appellee.

BARNES, Justice:

This action was commenced as a result of the sale of a certain 1967 Ford automobile by the Appellant, Darryl Cates, d/b/a National Motor Company [hereafter referred to as "Cates"], to the Appellee, Danny J. Darland [hereafter referred to as "Darland"]. Darland alleged that a fraud [odometer was turned back and salesman had represented reading as true mileage] was perpetrated upon him by Cates in the transaction and brought this action to recover actual and punitive damages.

The mileage shown at time of purchase was 34,676 miles. The previous owner testified that it had 74,624 miles on it when he traded it in.

The jury found for Darland and awarded actual damages of $200.00 and punitive damages of $7,000.00. Cates filed his motion for new trial and motion for a remittitur. Both were overruled. Cates then commenced this appeal.

Cates' first allegation of error contends that the Trial Court erred in allowing the witness, Joe Fleetwood, to testify of pre-

vious odometer alterations for National Motor Company and various other used car companies located in Tulsa, Oklahoma.

█ We must decide if it is proper, in an action for fraud, to admit evidence of other prior similar dealings by the alleged wrongdoer.

In the case of United States v. Marine, 413 F.2d 214 [7th Cir. 1969], the question of admissibility into evidence of prior fraudulent automobile sales transactions which involved persons other than the complaining party was considered. The Circuit Court held that such evidence was admissible because it was highly relevant to the issue of knowledge and intent as tending to show a consistent pattern of conduct. Also see Roan v. Smith, 272 Ala. 538, 133 So.2d 224, where an action for conversion of an automobile was brought against a used car dealer and his two brothers. The Trial Court admitted testimony of previous fraudulent transactions by one of the defendants which were almost identical to the conduct complained of here. The Alabama Court said:

"* * * In such a situation, evidence of such other fraudulent transactions or deceit by defendant is admissible to show fraud, motive, scheme, or intent."

In Kurn v. Radencic, 193 Okl. 126, 141 P.2d 580, the plaintiff sought to prove the elements of knowledge and intent of the defendant principal by proving the existence of prior similar acts. We held that under proper circumstances evidence of prior similar acts has a relevant and material bearing on the issues in the case and should be admitted, in spite of any other risks which might be involved in bringing such evidence before the triers of fact. We stated:

"There are many instances in the law in which proof of acts of similar misconduct is permitted because of the bearing of such proof upon some phase of the case."

And further stated:

"Since evil intent (malice), actual or presumed, is or may be an important factor in the awarding of exemplary damages; since such damages are awarded on the theory of punishment; * * * and since when evil intent, actual or presumed, is a material element or issue in a case, similar prior acts may, with judicial approval, be admitted in evidence to establish such intent, * * *."

█ The Appellant further contends that the lower court erred by not giving an instruction limiting such testimony. 12 Okl.St.Ann. § 577, subd. 5, provides:

"When the evidence is concluded and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking the same, and delivered to the court."

The Appellant did not object to the fact that there was no limiting instruction, nor did he offer an additional limiting instruction, as evidenced by the Transcript of Objections Made to Instructions.

We find that the testimony of Joe Fleetwood was properly admitted into evidence.

█ Appellant also contends that the Trial Court erred in giving Instruction Number 8 in conjunction with Instruction Number 6. The questioned Instructions are as follows:

"INSTRUCTION NUMBER 6

"You are instructed that the definition of fraud is as follows:

" 'To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suf-

fered injury; and (7) that all these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery.' "

## "INSTRUCTION NUMBER 8

"You are instructed that the term 'fraud' as used in these instructions embraces all multifarious means resorted to by one individual to get advantage over another by false suggestions or suppression of truth, including all surprise, trick, cunning, disassembling, mechanical alteration, and any unfair way by which another is cheated."

These Instructions are not contradictory when considered together. Number 6 sets out the elements necessary to prove fraud, while Number 8 sets out some of the forms or methods which may be used in bringing about fraud.

■ Appellant also objects to the inclusion of "mechanical alteration" in Instruction Number 8, his theory being that if there was no oral misrepresentation, then there was no actionable fraud. The part of this Instruction that includes "mechanical alteration" indicated to the jury that misrepresentation could be made without utterance of words.

In Austin v. Wilkerson, Inc., Okl., 519 P.2d 899, the buyer of a used car brought action against a seller alleging fraudulent misrepresentation in connection with turning back the odometer. The Appellee, who made the same argument as Appellant in our case, contended that no fraud could exist because there was no "oral representation." This Court quoted from Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083:

"* * * However, a representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him."

The explanation of the term "fraud", as set forth in Instruction Number 8, was proper and in accordance with Austin v. Wilkerson, Inc., supra.

■ Appellant further contends that the Trial Court erred in admitting Plaintiff's Exhibit Number 6 into evidence over the objection of the defendant. Plaintiff's Exhibit Number 6 consists of a 6 month-6,000 mile warranty that reflected the mileage of the subject automobile at the time of purchase. Appellant objected to its being admitted into evidence on the grounds that it was incompetent, irrelevant and immaterial, and that it would inflame and prejudice the jury. Appellant also requested that the jury be admonished that Plaintiff's Exhibit Number 6 was being admitted as evidence of the mileage for warranting parts, but not warranting that the mileage shown on the odometer was the actual mileage. In other words, such a document would have no relevancy in any case other than a contract action brought to enforce the specific warranty.

The fact that the document was part of the transaction and that it showed in writing the mileage which Appellee claimed had been represented to him were sufficient to show the materiality of the Exhibit and for its introduction into evidence.

The Trial Court considered Plaintiff's Exhibit Number 6 as part of the total transaction and, therefore, admissible. The document was one aspect of the misrepresentation and fraud claimed to be perpetrated by the Appellant. Appellee testified that the car salesman wrote the mileage on Exhibit Number 6 and that he relied on the written mileage as well as the oral representation made by Appellant's salesman.

■ The Appellant, by both its answer and during the trial, denied that it had made any representation of the mileage of the automobile. Exhibit Number 6 was relevant to this question because it contains what is apparently a written representation of the mileage. It is proper to show ev-

ery circumstance from which fraud could be presumed. Berry v. Stevens, 168 Okl. 124, 31 P.2d 950.

Appellant finally contends that the amount of punitive damages is excessive and does not bear any relation to the injuries suffered by the Appellee, and cites Hobbs v. Watkins, Okl., 481 P.2d 746, and Garland Coal and Mining Co. v. Few, 267 F.2d 785 [10th Cir. 1959], as supportive of this contention. These cases [Hobbs and Garland] involved a reduction in actual damages, and a refusal by the courts to interfere with the amount of punitive damages. Neither of the two cited cases supports the theory that the amount of exemplary damages is only to be considered in relation to the amount of actual damages.

Here, the Trial Court instructed the jury as to the provisions of 23 O.S.1971 § 9 and the specified purposes for punitive damages.

During the trial of this case, evidence was introduced concerning the financial condition of the Appellant, including the value of Appellant's business interests, the number of years of participation in those business interests, the total volume of automobiles sold, as well as monthly average sales, number of employees, profit records. The jury had ample evidence [regarding the amount of exemplary damages which would be required] to determine the amount of exemplary damages in accordance with the Court's Instruction Number 11. The jury instruction, like the statute, provides that one of the purposes of exemplary damages is to " * * * deter others from following in example."

The case of Garland Coal and Mining Co. v. Few, supra, cited by Appellant, considers the Oklahoma exemplary damage statute, 23 O.S.1971 § 9, and the specified purposes as being both to punish the offender and to benefit the general public. It holds that the question of the amount necessary to properly punish the Appellant and to benefit the general public is best left to the judgment of the jury, where no

flagrant abuse or error has occurred. It also involves the question of a comparison between the amounts awarded for the actual and exemplary damages and whether there exists any direct correlation between the two. In that appeal, just as in the present one, the Appellant urged that the punitive damages were excessive and that they exceeded the actual damages. The Circuit Court considered this specific contention and clearly rejected it by holding:

"The validity of the verdict for exemplary damages is not affected by an allowance of actual damages for a lesser amount, * * * while exemplary damages must bear some relation to the injuries inflicted and the cause thereof, they do not necessarily bear any relationship to the amount of damages allowed by way of compensation."

Boise Dodge, Inc. v. Clark, 92 Idaho 902, 453 P.2d 551, involves the mechanical alteration of the mileage of automobile odometer and an award of punitive damages by a jury. The jury awarded $350.00 actual damages and $12,500.00 punitive damages. The defendant appealed, claiming, among other things, that the amount of punitive damages was excessive. The Idaho Court, in sustaining the amount of damages, stated:

"The amount of actual damages sustained by a plaintiff is one indication of the culpability of the defendant's acts, but it cannot be the sole criterion for the assessment of punitive damages. Also relevant is the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others. These are legitimate concerns of the law, and the application of any fixed arithmetic ratio to all cases in which punitive damages are assessed would be arbitrary. It therefore must be recognized that the requirements of a 'reasonable relation' between actual and

punitive damages serves as a rough device available to trial and appellate courts for the purpose of paring down plainly extreme awards of punitive damages."

The Supreme Court of Alabama, in J. Truett Payne Company v. Jackson, 281 Ala. 426, 203 So.2d 443, held that the awarding of punitive damages in a fraud case is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing a similar wrong. That Court held that the jury verdict in favor of the plaintiff in the amount of $20,000.00, which included punitive damages, was justified. See also Krause v. Eugene Dodge, Inc., 265 Or. 486, 509 P.2d 1199.

We hold that the amount of $7,000.00 in punitive damages is not excessive in view of the statutory criteria " *  *  * for the sake of example, and by way of punishing the defendant." 23 O.S.1971 § 9.

In accord with the foregoing, the judgment of the Trial Court is affirmed.

All Justices concur.