**Virginia M. EDGAR,**
**Plaintiff-Appellant,**

v.

**FRED JONES LINCOLN–MERCURY OF OKLAHOMA CITY, INC. and Fred Jones, Inc., Defendants-Appellees.**

**No. 74–1857.**

United States Court of Appeals,
Tenth Circuit.

Oct. 24, 1975.

Gene A. Castleberry, of Castleberry & Lisle, Oklahoma City, Okl., for plaintiff-appellant.

Coleman H. Hayes, of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., for defendants-appellees.

Before HILL, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a diversity action in which the plaintiff sought the sum of $1,000 actual damages and $40,000 punitive damages from the two corporate defendants, Fred Jones Lincoln-Mercury of Oklahoma City, Inc., and Fred Jones, Inc., subsidiary and parent, respectively. The action was filed following the purchase by plaintiff of a used automobile from Fred Jones Lincoln-Mercury. It had been stipulated that the odometer had been turned back. At the time of purchase it read 30,137 miles. A true reading was 58,702 miles.

The lawsuit was based on common law fraud. The plaintiff had also demanded a jury trial. However, the trial court discharged the jury, treated it as a court case and entered a judgment for actual damages in the amount of $1,500 (notwithstanding that there had been a stipulation that the judgment for actual damages should be in the amount of $250.00). The court denied exemplary damages, but awarded $1,000 attorneys fees. At the same time, it assessed costs against plaintiff because the amount of the recovery had not satisfied the jurisdictional amount of $10,000. *See* 28 U.S.C. § 1332(b).

There was no dispute of fact as to the turnback of the odometer. The award of the court was derived from the amounts prescribed in 15 U.S.C. § 1989,[1] although this section had not been invoked by plaintiff.

The cited federal statute creates a private federal claim in favor of a person who has been defrauded by one who has reset an automobile odometer. The plaintiff is allowed under its provisions to recover up to $1,500 in actual damages and to receive attorneys fees and costs. This became effective in January 1973. Plaintiff's purchase had predated this to a considerable extent, the purchase having been made on May 26, 1971. The district court utilized the federal statute only for the purpose of measuring the damages. It indicated its belief that this was the maximum recovery which was available to the plaintiff. The court also expressed its belief that this disposition was equitable.

On this appeal we consider the following issues:

First, whether the federal statute, once it was adopted, preempts the field, so to speak, so as to preclude a plaintiff from pursuing a common law fraud action which this is.

Second, whether the court erred in dismissing Fred Jones, Inc. as a defendant. This ruling is based upon the court's conclusion that the evidence had failed to establish that the cause was a proper one for piercing the corporate veil.

Third, whether the plaintiff may in support of its allegation of fraud introduce evidence as to other similar odometer transactions practiced by defendant.

The evidence of prior wrongful odometer rollbacks would be in our judgment relevant in proving malice or wanton conduct on the part of the defendant or defendants, and thus it was error for the court to close the door to all such showing.

We are of the opinion that the federal Act did not supersede the state remedy and that it was therefore improper to

---

1. This is part of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1901 *et seq.* Section 1984 of this chapter provides:

 It is unlawful for any person or his agent to disconnect, reset, or alter the odometer of any motor vehicle with the intent to change the number of miles indicated thereon.

 And § 1989 is the damage provision to which reference has been made, and this declares:

 (a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

 (1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

 (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

use the federal Act as a measure of the damages and as a limitation on damages in a state diversity action. We also conclude that it was error to dismiss the action against Fred Jones, Inc. without allowing the plaintiff to discover all relevant facts with respect to the parent-subsidiary relationship.

## I.

Does the Federal Motor Vehicle Information and Cost Savings Act supersede the common law fraud remedy which was pursued in this case?

■ The clearest reason for the federal law not limiting the plaintiff's recovery is that the action arose before the statute was enacted. Section 412 of the Motor Vehicle Information and Cost Savings Act, Public Law 92–513, provides for the operative part of the Act taking effect 90 days after the date of enactment (October 20, 1973). The effective date was, therefore, January 18, 1974. The state cause of action for common law fraud having arisen May 26, 1971, at the time of the purchase of the car, it would not be subject to a subsequent federal statute unless the statute applied retrospectively. There is no expressed intent on the part of Congress to apply it retrospectively; indeed, there is an express intent that it is to be effective 90 days subsequent to the enactment. And there is no basis for *implying* a congressional intent that the statute is to be applied retrospectively. The general rule is that retrospective application is not implied. A clear expression of legislative intent is required. *Cf. Claridge Apartments Co. v. Comm'r*, 323 U.S. 141, 164, 65 S.Ct. 172, 89 L.Ed. 139 (1944); *Gibbons v. Pan American Petroleum Corp.*, 262 F.2d 852, 855 (10th Cir. 1958); *Benjamin v. Hunter*, 176 F.2d 269, 272 (10th Cir. 1949).

We are not holding that there exists a conflict between the federal law and the state remedy which was here followed, whereby there could be a holding that the federal law preempts the state law. No such conflict is apparent.

The congressional intent is set forth in 15 U.S.C. § 1991 as follows:

This subchapter does not—(1) annul, alter, or affect the laws of any State with respect to the disconnecting, altering, or tampering with odometers with the intent to defraud * * * except to the extent that those laws are inconsistent with any provision of this subchapter and then only to the extent of the inconsistency.

15 U.S.C. § 1991.

■ The federal statute when it speaks of inconsistent provisions is talking about state statutes which have to do with disconnecting, altering, or tampering with odometers with the intent to defraud, so it has in mind state laws specifically dealing with the odometer subject. It does not refer to a common law remedy in fraud. So, there is no basic conflict between the law of Oklahoma and the federal statute.

Quite apart from the express provision, 15 U.S.C. § 1991, it is clear from the legislative history that Congress' apprehensions had to do with state provisions that were less stringent than the statute which was being enacted. *See* Statement of Rep. Staggers, 118 Cong. Rec. 18218 (May 22, 1972); Statement of Rep. Broyhill, 118 Cong.Rec. 18219 (May 22, 1972); 1972 USCCAN 3692, 3970–72.

From our study we see no tenable reason for using the federal statute either on the theory that it has supplanted state remedies or as a guide for the award of damages. We realize that the trial court was conscientiously seeking to reach an equitable result.[2] But the method used was not proper; it was in conflict with the law.

■ If the Oklahoma law is applied, it includes an award of punitive damages

---

2. *See* 383 F.Supp. at 585, where the court concludes "that in no event could [it] conscientiously approve a verdict in excess of $2500 . . .."

"where the defendant has been guilty of oppression, fraud or malice, actual or presumed." Such damages are part of a state policy of discouraging wrongdoing by awarding damages "for the sake of example, and by way of punishing the defendant." Okl.Stat. T.23 § 9. Since the Oklahoma law with respect to the jury award must be followed by a United States district judge dealing with an Oklahoma action, *see Hanna v. Plumer,* 380 U.S. 460, 475, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), and inasmuch as the Oklahoma law allows, punitive damages in this type of case, we perceive no reason for not submitting the punitive damage issue. *See Cates v. Darland,* 537 P.2d 336 (Okl.1975), wherein actual damages were $200 and punitive damages were $7,000. *See also Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 453 P.2d 551 (1969), which was cited with approval by the Oklahoma Supreme Court in *Cates;* there the court had given actual damages of $350 and punitive damages of $12,000.

 It is apparent that the use by the court of the federal statute as a model for the award of damages deprived the plaintiff of important rights which were available to her under the Oklahoma law. Therefore, this action on the part of the court was erroneous, and it was also error for the court to award costs to the defendant based on the amount of the judgment for no other reason than exemplary damages could easily reach the $10,000 statutory amount, so that there is no basis for denying that there is a justifiable good faith allegation that the amount in controversy exceeded $10,000.

## II.

### Did effective control exist between Fred Jones, Inc. and Fred Jones Lincoln-Mercury?

We do not hold that the evidence before the court was sufficient as a matter of law to establish the necessary control by the parent corporation of the subsidiary corporation, whereby it could be said that the subsidiary was an alter ego or agent of the parent. However, the evidence was not presented.

 Under the law of Oklahoma it is necessary to establish something more than ownership of virtually all of the subsidiary stock by the parent or identity of directors in order to treat the parent and subsidiary as one. *See Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.,* 178 Okl. 15, 61 P.2d 645 (1936); *St. Louis & S. F. R. Co. v. Sanford,* 54 Okl. 185, 153 P. 650 (1915); Annotation, 7 A.L.R.3d 1343; 1 Fletcher Cyclopedia of Corporations, § 43; 18 Am.Jur.2d, Corporations § 17. The evidence must establish that the parent's control is so complete as to render the subsidiary an instrumentality of the parent. *See Gulf Oil Corp. v. State,* 360 P.2d 933, 936 (Okl.1961); *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., supra;* Annotation, 7 A.L.R.3d 1343, 1353; 18 Am.Jur.2d, Corporations § 17; 19 Am.Jur.2d, Corporations § 717. A court will disregard the corporate entity where fraud or illegal or inequitable conduct is the result of the use of the corporate structures. *See Robertson v. Roy L. Morgan, Production Co.,* 411 F.2d 1041, 1043 (10th Cir. 1969) (applying Oklahoma law); *Sautbine v. Keller,* 423 P.2d 447 (Okl.1967); *Gulf Oil Corp. v. State, supra;* Annotation, 7 A.L.R.3d 1343, 1354–55; 18 Am.Jur.2d, Corporations § 17. This entire matter is, of course, a question of fact and like all questions of fact ought to be submitted to the jury provided, of course, that there is substantial support in the evidence. *Cf. Sautbine v. Keller, supra.*

 It is clear that the plaintiff's allegations concerning stock ownership and interlocking directors were insufficient standing alone to justify disregard of the corporate entity. At the same time, plaintiff was precluded from seeking information which would perhaps have satisfied the requirements of law such as the names and the positions of persons who may have issued orders regarding rollback of odometers and information concerning whether the parent actually

issued such orders. Similarly, the plaintiff had no opportunity to introduce evidence that the parent had practiced rollbacking in prior years. This latter would be some evidence that Fred Jones Lincoln-Mercury in its turn-back activity was carrying out the policies of the parent. Since the cause is to be remanded, plaintiff is entitled to pursue discovery which would either establish or fail to establish the existence of facts sufficient to justify the piercing of the corporate veil.

### III.

Should the plaintiff have been allowed to offer evidence of other transactions?

 Oklahoma law recognizes that proof of prior acts is admissible to show knowledge or intent. *See, e. g., Kurn v. Radencic,* 193 Okl. 126, 141 P.2d 580 (1943), and *see also Cates v. Darland,* 537 P.2d 336 (Okl.1975), which holds that testimony of prior acts is probative with respect to fraudulent intent and is also admissible as bearing on the award of punitive damages.[3]

The recent decision of the Oklahoma court in *Cates* is so clear on this question of receipt of similar offenses in an odometer case that on retrial plaintiff must be allowed to present evidence of other rollbacks perpetrated both by the parent and the subsidiary.

The judgment is reversed and the cause remanded for a new trial consistent with the views expressed herein.

---

**3.** The Oklahoma court said:

Since evil intent (malice), actual or presumed, is or may be an important factor in the awarding of exemplary damages; since such damages are awarded on the theory of punishment; * * * and since when evil intent, actual or presumed, is a material element or issue in a case, similar prior acts may, with judicial approval, be admitted in evidence to establish such intent. * * * *Cates v. Darland, supra,* at 338, quoting *Kurn v. Radencic, supra,* at 582.