Warren K. MITCHELL and Linda C. Mitchell, Appellees,

v.

FORD MOTOR CREDIT COMPANY, and Able Auto Recovery Company, Appellants.

No. 57267.

Supreme Court of Oklahoma.

April 24, 1984.

Rehearing Denied June 6, 1984.

Jim K. Goodman, Crowe & Dunlevy, Oklahoma City, and Jack L. Atkinson, Lawton, for appellants.

John M. Nelson, Park, Nelson, Caywood & Park, Chickasha, for appellees.

OPALA, Justice:

The dispositive issue on certiorari is whether the evidence supports an award of actual and punitive damages where a secured creditor repossessed collateral in the erroneous belief that the debtor was in default.[1] We answer this question in the affirmative.

In separate transactions a short time apart Mr. and Mrs. Mitchell [debtor] purchased two farm tractors on credit. The Ford Motor Credit Company [creditor] acquired the installment contracts on these vehicles.[2] Each agreement provided for four annual installments of approximately $6,500.00 each. The creditor accepted the initial annual installment on the first tractor approximately 50 days after it was due. Apparently unaware that payment on the second tractor had been received two weeks earlier, the creditor elected to repossess the second tractor. It engaged for this purpose Able Auto Recovery [Recoverer]. When the second tractor could not be found, some 25 days after the debtor made payment on it, the creditor instructed the recoverer to repossess the first tractor. The creditor did effect repossession of the first tractor and then returned it two weeks later.

The debtor brought suit for conversion, alleging the tractor had been wrongfully repossessed when he was not in default. In a separate cause of action the debtor sought a decree extinguishing the security interest in that tractor. The verdict was in favor of the debtor for actual damages of $843.74 and for punitive damages of $60,-000.00. Judgment was rendered on the verdict and the creditor's security interest in the repossessed tractor was extinguished. The Court of Appeals affirmed by summary opinion. Because the case appeared to merit an in-depth examination into the claims of error pressed for our review, we granted certiorari on the joint petition of the creditor and recoverer.

Section 9–503 of the Uniform Commercial Code allows a secured party to use self-help in the repossession of collateral when the debtor is in default.[3] A secured party who has invoked the provisions of 12A O.S.1981 § 1–208, which afford an op-

1. We must decline to review that portion of the trial court's judgment which extinguished Ford Motor Credit Company's lien on the personalty. The petition for certiorari does not address itself to that error. Issues not raised in the petition for writ of certiorari will not be given consideration. *Johnson v. Wade,* Okl., 642 P.2d 255, 258 [1982].

2. The retail installment contract contains the following paragraph:
"In the event Buyer defaults in any payment, or fails to comply with any of the provisions hereof, ... or the Seller deems the Property in danger of misuse or confiscation, or Seller otherwise reasonably deems the indebtedness or the Property insecure, Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, including the right to repossess the Property wherever the same may be found with free right of entry ..."

3. 12A O.S.1981 § 9–503 provides in pertinent part:
"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process ..."

tion to accelerate the debt at will when proper conditions arise, must show that the statutory power was not exercised arbitrarily or irresponsibly but in good-faith belief that the prospect of payment was impaired.[4]

■ The creditor claimed at trial that its decision to repossess was made in an honest and good-faith belief that the debtor (1) was in default, (2) was attempting to sell the collateral in violation of the contract and (3) had moved from the state without notifying the creditor. The debtor's claim rested on competent proof showing (1) the account was not in default, (2) the creditor had approved the sale of the first tractor to a third party and (3) the creditor was cognizant of the debtor's new address. Where conflicting evidence has been presented to the jury and its verdict is supported by competent evidence, it will not be disturbed on appeal.[5]

■ The creditor complains that the trial court admitted evidence of the cost of renting a substitute tractor. The statute, 23 O.S.1981 § 61, provides that the measure of damages for a tort of conversion is the amount which will compensate the injured party for all the detriment proximately caused by the loss, whether it could have been anticipated or not. The debtor was hence not limited to just a difference in value of the tractor before its conversion and after its return. When property, which has been converted and then restored, has a distinct value, one measure of damages is the reasonable use value for the period of wrongful detention as determined by the fair market rental value.[6]

The creditor argues punitive damages were improperly awarded because the actions of its representatives were free from fraud, oppression or malice. In the alternative, it asserts that the punitive damages award was excessive.[7]

■ Punitive damages are allowable when there is evidence of reckless and wanton disregard of another's rights from which malice and evil intent may be inferred.[8] The proof adduced by the debtor

4. The terms of 12A O.S.1981 § 1–208 provide: "A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he *deems himself insecure*' or in words of similar import shall be construed to mean that he shall have power to do so *only if he in good faith believes* that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised." [Emphasis added].
See also Quinn's Uniform Commercial Code Commentary and Law Digest, 1983 Cumulative Supp. No. 2, § 1–208[A][1] at pp. S1–57–59 and § 9–503[A][7][c] at pp. S9–317–321.

5. *Vickers v. Ittner*, Okl., 418 P.2d 700, 701 [1966]. A creditor's good-faith belief in default or insecurity will be judged by an objective standard, based on commercial reasonableness. See II Gilmore, Security Interests in Personal Property, § 43.4, 1197 [1965]; 30 U.Chi.L.R. 666, 672 [1962–63].

6. *Thomas v. First Nat'l Bank of Tecumseh*, 32 Okl. 115, 121 P. 272, 274 [1912]. In addition, creditor objects to the fact that inadmissible exhibits on crop loss were allowed to go to the jury room during deliberation. The trial judge found the evidence of crop loss too speculative to warrant recovery and sustained the creditor's

demurrer to the evidence. While it is ordinarily error to allow inadmissible exhibits in the jury room, the creditor was not here prejudiced thereby since the trial judge limited actual damages to the cost of rental and expenses incurred in recovering the tractor.

7. 23 O.S.1981 § 9. While the U.C.C. does not explicitly provide for punitive damages, § 1–106 permits a punitive damages award based upon non-Code law. After a finding that there was a conversion, punitive damages may be awarded under existing statutory and case law. See *Davidson v. First Nat'l Bank & Trust Co., Yale*, Okl., 609 P.2d 1259, 1261 [1977] (20 U.S.C.Rep. 562).

8. *Sunray DX Oil Co. v. Brown*, Okl., 477 P.2d 67, 70–71 [1970]; *Gulf Oil Corporation v. McCoy*, Okl., 416 P.2d 948, 952 [1966]; *Dilworth v. Fortier*, Okl., 405 P.2d 38, 45 [1965]; *Fuller v. Neundorf*, Okl., 293 P.2d 317, 320 [1956]; see also *Garland Coal & Mining Company v. Few*, 267 F.2d 785, 790–791 [10th Cir.1959]; *Wootan v. Shaw*, 205 Okl. 283, 237 P.2d 442, 444 [1951]. The misconduct for which punitive damages may be exacted is characterized by 23 O.S.1981 § 9 in terms of defendant's culpability of "oppression, fraud or malice, *actual or presumed* ..." [emphasis added]. Case law construing this language recognizes that malicious or op-

did tend to show, among other things: (1) no note was in default; (2) the debtor had contacted the creditor to determine the balance of both notes because he wanted to sell the tractors at auction; (3) the second tractor was sold at auction with the creditor's acceptance of the purchase; (4) the creditor possessed the correct mailing address of the debtor and (5) the creditor, though aware of all the salient facts, nevertheless instructed the recoverer to repossess a tractor it knew did not stand as collateral for the note mistakenly thought to be in default.

This, and other evidence in the record, indicates that the creditor's internal operations were so inefficient that there was both scant coordination and communication among its employees. While some of them were accepting payments on installment contracts, others busily directed that repossession be effected of the very equipment that constituted collateral for obligations not then in default. The jury could conclude from the evidence presented that the creditor not only was indifferent to the consequences of its actions, but also that its flawed work flow process demonstrated a reckless disregard for the rights of its debtors. The long time span during which the creditor was shown to have remained ignorant of salient facts with respect to its repossession also is suggestive of that extraordinary degree of negligence which could easily be regarded as gross.[9]

The creditor further argues that the punitive damages award is out of proportion to the injury inflicted. We cannot agree. A verdict is not necessarily subject to reversal because actual damages allowed were for less than the amount of punitive damages.[10] In arriving at the amount of damages required to deter others and to punish, the jury may properly take into account the financial condition of the defendant.[11] The award—for much less than the amount sought ($400,000)—was far from excessive when considered in light of the facts adduced and of the creditor's disclosed net worth.

Lastly, the creditor complains that the trial court erroneously instructed the jury that a principal-agent relationship existed between the creditor and recoverer as a matter of law. This instruction is challenged because the recoverer is asserted to have been an independent contractor. While the pleadings do not specifically state that this was an issue, the debtor met the burden by alleging and proving facts necessary to establish the existence of the agency relationship. The allegations were that the recoverer, at the request of the creditor, took possession of the tractor without the knowledge or consent of the debtor. The *undisputed* facts showed (1) that in the course of trying to locate the tractor, the recoverer's employees made two telephone calls to the creditor—one to ascertain the procedure for locating the serial number on the tractor and the other to inform the creditor that the tractor it was seeking was not available, and (2) that the creditor, upon receiving this information, knowingly directed the recoverer to repossess the wrong tractor. In our opinion, these facts are relevant on the issue of agency relationship between the creditor and recoverer. Where facts relied upon to establish the existence of the agency are undisputed and no conflicting inferences

---

pressive intent may be inferred from "complete indifference to consequences", "conscious or reckless disregard of the safety of others" or even from "gross negligence". *Morgan v. Bates,* Okl., 390 P.2d 486, 488 [1964]; *Wootan v. Shaw,* supra; *Keener Oil & Gas Co. v. Stewart,* 172 Okl. 143, 45 P.2d 121 [1935] and *Garland Coal & Mining Company v. Few,* supra.

9. In *Wootan v. Shaw,* supra note 8, the court held that "gross negligence", sufficient for recovery of exemplary damages, must be "such disregard of another's rights, as is deemed equivalent to such [evil] intent" and that it "implies such entire want of care or recklessness of conduct as is the equivalent of 'positive misconduct' or evinces 'a conscious indifference to consequences' ".

10. *Cates v. Darland,* Okl., 537 P.2d 336, 340 [1975]; *Sopkin v. Premier Pontiac, Inc.,* Okl. App., 539 P.2d 1393, 1394 [1975]; *Bush v. Midwest Auto Sales, Inc.,* Okl.App., 618 P.2d 952, 954 [1980].

11. *Cates v. Darland,* supra note 10 at 340.

may be drawn therefrom, the question of whether an agency exists is one of law for the court.[12] Even assuming that conflicting inferences could be drawn from these undisputed facts, the instruction was at most harmless error. The argument of the contractor and recoverer is that each may have been assessed punitive damages for the acts of the other. Even if the recoverer had been in fact an independent contractor, the error complained of would be of no avail. This is so because the two defendants would be regarded as joint tortfeasors and hence jointly and severally liable for *all* damages.[13]

The Court of Appeals opinion is withdrawn and the trial court's judgment is affirmed.

SIMMS, V.C.J., and LAVENDER, DOOLIN, HARGRAVE, WILSON and KAUGER, JJ., concur.

BARNES, C.J., and HODGES, J., concur in part and dissent in part.

HODGES, Justice, dissenting in part:

I dissent to that part of the majority opinion which affirms the award of punitive damages. In my opinion the award of $60,000 is excessive and a remittitur should be required.

This is not a case where a defendant intentionally confiscated property of another without provocation. Here, the plaintiffs were the creators of their misfortune. They defaulted on their secured obligation, thereby creating insecurities and anxieties which, unfortunately, caused an over reaction by the defendants in an effort to protect their collateral. While defendants' administrative inefficiency may justify the jury's conclusion of reckless and wanton disregard of the plaintiffs' rights, the defendants did attempt to rectify their wrong by returning the tractor two weeks after repossession. Given this state of facts, an award of $843.71 for actual damages does not fully justify a punitive award of $60,-000.

I am authorized to state that Chief Justice DON BARNES joins with me in this dissent.

---

**12.** *Keel v. Titan Construction Corp.,* Okl., 639 P.2d 1228, 1230 [1982].

**13.** *Cities Service Oil Company v. Merritt,* Okl., 332 P.2d 677, 683 [1958].