Irving J. HOROWITZ, as Administrator and Personal Representative of the Estates of Bruce S. Horowitz, Catherine O. Horowitz, and Michael Brandon Horowitz, deceased, for and on behalf of Brian Scott Horowitz, Plaintiff,

v.

SCHNEIDER NATIONAL, INC., a Nevada corporation; Schneider National Carriers, Inc., a Nevada corporation, Defendants.

No. C88–100–J.

United States District Court, D. Wyoming.

March 10, 1989.

See also 708 F.Supp. 1573.

· Guy, Williams, White & Argeris, Cheyenne, Wyo., for plaintiff.

Branney, Hillyard, Kudla & Lee, Englewood, Colo., Sullivan and Zunker, Cheyenne, Wyo., for defendants.

ORDER DENYING DEFENDANTS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE THEORY OF RETAINED CONTROL AND GRANTING THE MOTION AS TO THE MERE INSTRUMENTALITY RULE

JOHNSON, District Judge.

On December 19, 1988, Schneider Nation-

al, Inc.[1] filed a motion for partial summary judgment. On January 9, 1989, plaintiff filed a brief opposing that motion. On January 13, 1989, plaintiff filed a supplement to that brief. On January 17, 1989, defendants filed a supplement to their motion for partial summary judgment.

### Parental Corporation Liability

#### A. The Theory of Retained Control

The mere fact that a corporation is the parent of a subsidiary neither immunizes nor automatically subjects it to suit. Under Wyoming law, a parent corporation is analogized to an owner of a work site. *Fiscus v. Atlantic Richfield Company*, 742 P.2d 198, 201 (Wyo.1987) (citing *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 896 (Wyo.1986)); *Wessel v. MAPCO, Inc.*, 752 P.2d 1363, 1367 (Wyo.1988). Following the Wyoming Supreme Court's direction, this court examines the law governing liability of work site owners.

#### I. Owner of Work Site Liability

In *Jones v. Chevron U.S.A.*, 718 P.2d at 896, an owner of a work site was sued by the injured employee of the owner's independent contractor. Subject to the following limitations, the court allowed the action to proceed:

> We hold that an owner of a work site who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform.

*Id.* Several Wyoming cases have spoken to the requisite control over an independent contractor's performance.

In *Jones v. Chevron*, the owner (Chevron) was sued by the employee (Jones) of its independent contractor (Automation & Electronics, Inc.). Chevron had hired Automation to construct power lines running to some of its oil and gas wells. As Jones completed this assignment from a platform, electricity arced from the transformers, coursed through his body, and knocked him from the platform. The court permitted suit against Exxon, finding it had exercised actual control over the energizing of the power lines. *Id.* at 896. Chevron required that its permission be obtained before Automation could de-energize lines. Chevron discouraged de-energization and might have denied permission so that its operations would not be interrupted. *Id.* at 896–97. The court found this retained control sufficient to raise a duty of reasonable care.[2] *Id.* at 897.

In *Stockwell v. Parker Drilling Company, Inc.*, 733 P.2d 1029 (Wyo.1987), the owner (Parker Drilling Company) hired an independent contractor (Larson Construction Company, Inc.) to construct two buildings on Parker's land. Larson hired a subcontractor (MATO, Inc.) to install insulation in the buildings. An employee (Stockwell) of MATO was injured by a fall resulting from a buckled roof panel. Among other defendants, Stockwell sued Parker. *Id.* at 1030. The court found that Larson exercised an unrestrained power in directing construction of the buildings. The court found that Parker did not retain control of safety or any operative detail or method of work. The court found insufficient Parker's retention of "the right to inspect the construction progress and prescribe where Parker desired windows and

---

**1.** The parent, Schneider National, Inc., was joined in its motion for partial summary judgment by three of its subsidiaries—Schneider National Leasing, Inc., Schneider Transport, Inc., and Schneider Tank Lines, Inc. The parties have since stipulated that these three subsidiaries should be dismissed. By Order of March 3, 1989, the court has dismissed them.

**2.** With respect to safety, the contract between Chevron and Automation provided as follows:

> Contractor agrees, while on [Chevron's] premises or vessels, to observe such safety rules as [Chevron] shall prescribe as necessary for the protection of personnel and property * * *. *Id.* at 892. The court later stated that these safety provisions "may not have given Chevron enough control to create a duty of reasonable care...." *Id.* at 896.

doorways to be located."[3] *Id.* at 1033.

In *Johnston v. Conoco, Inc.*, 758 P.2d 566 (Wyo.1988), an owner/operator of an oil and gas lease (Conoco) hired an independent contractor (Sauer Company) to drill a well. A floor-hand (Johnston) of Sauer Company was injured when his arm was caught in the rig's tongs after the driller hit the power. *Id.* at 566–67. In support of his claim against Conoco, plaintiff simply stated that it had a "company man" living in a trailer on location during the course of drilling. The court found no evidence that "Conoco exercised control over the details of drilling or the supervision of employees." *Id.* at 570.

Finally, in *Hill v. Pacific Power & Light Company*, 765 P.2d 1348 (Wyo.1988), the owner (PP & L) hired a services contractor (NESCO) to work at its Jim Bridger power plant. An employee (Hill) of NESCO was injured when he fell from scaffolding after the handrail broke loose. He argued that PP & L had retained sufficient control that it owed him a duty of reasonable care. The court focused on PP & L's control over construction or later modification of the scaffolding that caused Hill's fall. *Id.* at 1349–1350. Finding no tie between PP & L and the scaffolding, the court found his claim against PP & L insufficient. This result was not changed by Hill's attempted showing that PP & L had allegedly exercised actual control over NESCO employees in various instances, had made recommendations to a NESCO foreman, or had inspected the work being done. *Id.* at 1350.

**B. Plaintiff's Offered Evidence**

 Schneider National, Inc. (SNI) is the parent of four subsidiaries: Schneider National Carriers, Inc., Schneider National Leasing, Schneider Transport, Inc. and Schneider Tank Lines, Inc. It is a holding company. Lubner Depo. at 6, 11. SNI services its subsidiaries from seven departments: a Technical Services Department, a Regulatory Department, a Line Haul Services Department, a Payroll Department, a Loss Management, a Loss Prevention, and a Safety Department (citing references omitted). This system is in place to achieve technical expertise that comes with various departments performing activities common to a number of those of the various subsidiaries. Schneider Depo. at 11–12.

Steve Duley manages the Line Haul Services Department. Morton Depo. at 11; Lubner Depo. at 22. Before the July 10, 1987 accident, SNI was purchasing between 300 and 600 Holland hitches per year. Duley Depo. at 47. Maintenance people in the Line Haul Services Department installed these fifth wheels to tractors for Schneider Transport, Inc. Lubner Depo. at 16.

Gary Morton manages the technical aspects of vehicle specifications. Morton Depo. at 11. He had authority to decide what brand of mechanical parts would be used. *Id.* at 12. He is the author of service bulletin 329 (located at Exhibit C to plaintiff's Brief in Opposition to Defendants' First Motion for Summary Judgment). Duley Depo. at 42. This bulletin provided information that all Holland fifth wheels have a safety lock tongue. The service bulletin announced a "campaign to repair all tongues" and to "prevent[ ] improper hook-up to high trailers."

On August 29, 1986, Schneider National Carriers, Inc. and Intran, Inc. (a subsidiary of Navistar International Corporation) entered a maintenance agreement. An agent

---

**3.** The court also suggested that certain control exercised by the owner would not suffice:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control *over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of the right of supervision that the contractor is not entirely free to do the work his own way.

*Stockwell*, 733 P.2d at 1033 (quoting Restatement (Second) of Torts, § 414, comment (c)) (emphasis in *Stockwell* ).

of Intran, Brittain Ideal Lease in Portland, Oregon, provided maintenance and preventive maintenance inspections on the tractor and trailer in question. Quinones Depo. at 5, 59–72. Quinones, a representative of Intran, has testified that an SNI maintenance supervisor, Dennis Damman, told him how the vehicle should be maintained. Quinones Depo. at 11–12. Ideal Leasing had to obtain approval from Dennis Damman of repairs and costs before they could act. It is within Dennis Damman's control to say whether a repair will be done. Morton Depo. at 67–68.

Although Lubner, the president of Schneider National Carriers, Inc., could not remember the name, he testified that SNI "had an organization that basically maintained equipment." Lubner Depo. at 54. Plaintiff has produced an SNI Preventive Maintenance Checklist and a SNI Preventive Maintenance Checklist Narrative. (Exhibits Q, R attached to Plaintiff's Brief in Opposition to Defendants' First Motion for Summary Judgment.) These documents provide much detail as to maintenance of tractors and trailers. Mr. Quinones testified that he received several SNI bulletins pertaining to maintenance requirements. Quinones Depo. at 12–13. He testified that SNI were "sticklers" in having their repair specifications complied with. Mechanics do everything on the list and anything else needing done at a cost under $500. For repairs above $500, SNI was called for authorization. *Id.* at 13, 31.

SNI also took a role in safety matters, hiring employees to deal with that concern. Schneider Depo. at 11. SNI supplied technical support to its subsidiaries in the area of safety. Lubner Depo. at 57, 91.

The role of the subsidiaries in these areas appears minimal. The subsidiaries, including Schneider National Carriers, relied solely upon SNI's line services or technical services. Lubner Depo. at 55; Morton Depo. at 14. The limited role of Schneider National Carriers is illustrated by its inability to veto Steve Duley's decision to use Holland fifth wheels. Morton Depo. at 123.

The court finds that the above evidence creates a material issue of fact as to liability against SNI under a theory of retained control. The court is not persuaded by SNI's argument that it cannot be liable since it was not a party to the Maintenance Agreement. The agreement was signed by Steve Duley of SNI and apparently used exclusively by that entity.

## C. The Mere Instrumentality Rule

Under the mere instrumentality rule, a corporate parent cannot distinguish itself from its subsidiary in certain circumstances. Wyoming has not adopted or addressed this rule. Plaintiff argues that the rule should be applied in this case, relying on Tenth Circuit cases construing the law of other states.

For the mere instrumentality rule to apply, parental control must be "so complete as to render the subsidiary an instrumentality of the parent." *Edgar v. Fred Jones Lincoln–Mercury of Oklahoma City, Inc.,* 524 F.2d 162, 166 (10th Cir.1975) (citations omitted). It is the actual exercise of control, not mere opportunity to exercise it, that matters. *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358, 1364 (10th Cir. 1974).

In *Fish v. East,* 114 F.2d 177, 191 (10th Cir.1940), the court listed ten determinative circumstances in applying the instrumentality rule:

(1) The parent corporation owns all or the majority of the capital stock of the subsidiary.

(2) The parent and subsidiary corporations have common directors or officers.

(3) The parent corporation finances the subsidiary.

(4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(5) The subsidiary has grossly inadequate capital.

(6) The parent corporation pays the salaries or expenses or losses of the subsidiary.

(7) The subsidiary has substantially no business except with the parent corpo-

ration or no assets except those conveyed to it by the parent corporation.

(8) In the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division.

(9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.

(10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Based on these standards, plaintiff argues that Schneider National Carriers, Inc. is the mere instrumentality of Schneider National, Inc.

■ Mere ownership of the subsidiary's stock by the parent corporation does not establish the requisite control. *Milgo Electronic Corporation v. United Business Communications, Inc.*, 623 F.2d 645, 662 (10th Cir.1980), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *Robertson v. Roy L. Morgan, Production Company,* 411 F.2d 1041, 1043 (10th Cir. 1969). Neither is an identity of directors sufficient. *Edgar,* 524 F.2d at 166.

In *Luckett v. Bethlehem Steel,* 618 F.2d 1373, 1378–79 (10th Cir.1980), the court declined to treat a subsidiary as a mere instrumentality, finding that a majority of the *Fish* factors were without dispute lacking. This was so despite allegations in *Luckett* that the parent owned 100% of the stock of another company which in turn owned 70% of the stock of the subsidiary; that the parent contracted to furnish the subsidiary with technical services and manufacturing equipment; and that the parent contracted to furnish to the subsidiary management services including acquiring and maintaining proper facilities, adequate equipment, and experienced and dependable personnel. *Id.* at 1377–79.

■ Examining the *Fish* factors in the circumstances of this case, the court must come to the same result. Plaintiff is able to show that Donald Schneider (the president of the parent) owns the capital stock of the subsidiary; that the parent corporation handles its subsidiary's revenues and pays the subsidiary's expenses from them; that the parent caused the subsidiary's incorporation through a merger of other companies; and that the president of the subsidiary (Mr. Lubner) reports to an employee of the parent. Plaintiff is unable to demonstrate that the parent corporation itself owns the stock of the subsidiary; that the parent and subsidiary have common directors or officers; that the parent finances the subsidiary with funds of the parent; that the subsidiary has grossly inadequate capital; that the parent pays salaries or expenses or losses of the subsidiary with funds of the parent; that the subsidiary does substantially all its business with the parent; that papers of the parent refer to the subsidiary as a department or division; or that the subsidiary does not observe its formal legal requirements of incorporation. In these circumstances, the court cannot apply the mere instrumentality rule.

■ Plaintiff also has a burden to demonstrate that the use of the corporate structures will result in fraud or illegal or inequitable conduct. *Luckett,* 618 F.2d at 1379; *Quarles,* 504 F.2d at 1362; *Wyoming Construction Company v. Western Casualty and Surety Company,* 275 F.2d 97, 104 (10th Cir.1960). In *Luckett,* the court recognized that this usually raises a fact question for a jury. Finding no showing of fraud or inequitable conduct resulting from the use of corporate structures, the court in *Luckett* did not allow the issue to go to the jury. 618 F.2d at 1379. Although the parties have assured the court that they have presented all materials they wish to rely on, the court finds no evidence that inequitable conduct was the result of the use of corporate structures. Accordingly, the court grants summary judgment in favor of defendants as to the claim based on the mere instrumentality rule.

IT IS ORDERED that defendants' motion for partial summary judgment as to the theory of retained control is DENIED;

IT IS FURTHER ORDERED that defendants' motion for partial summary judg-

ment as to the mere instrumentality rule is GRANTED.